UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:13-CR-145-TAV-HBG-4 |
| | ) | |
| LORENEZA JACKSON, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION & ORDER**

This criminal matter is before the Court for consideration of the Report and Recommendation entered by United States Magistrate Judge H. Bruce Guyton ("R&R") [Doc. 91]. The R&R addresses the defendant's Motion to Suppress Evidence, in which the defendant seeks an order suppressing cash that was discovered on his person and seized from him on September 14, 2013 [Doc. 79]. Magistrate Judge Guyton held a hearing on the motion on August 28, 2014 [Doc. 84]. The defendant submitted a post-hearing memorandum, as permitted by the Court [Doc. 90]. Magistrate Judge Guyton then issued the R&R, recommending that the Court deny the defendant's motion [Doc. 91 p. 18]. The defendant has filed objections to the R&R [Doc. 94]. For the reasons that follow, the Court will overrule the defendant's objections, accept the R&R, and deny the defendant's motion to suppress.

I.  **Standard of Review**

The Court reviews *de novo* those portions of the R&R to which the defendant has objected.  28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b).  Accordingly, the Court considers the motion to suppress, underlying and supporting briefs, government's response, evidence, R&R, and objections, all in light of the applicable law.

Magistrate Judge Guyton's findings of fact [Doc. 91 p. 6–7] are supported by the evidence, and the defendant does not expressly object to them.  To the extent that any of the defendant's objections implicate a fact found in the R&R, the Court has considered the dispute in the context of its analysis of the defendant's objections.

II.  **Facts and Procedural History**

The defendant is charged with conspiring to distribute one kilogram or more of heroin, and with possessing with intent to distribute heroin [Doc. 7].  On the morning of September 14, 2013, Officer Robert Cook of the Knoxville Police Department observed that the defendant was not wearing a seatbelt as a passenger in a car being driven by a female driver [Doc. 91 p. 6].  Upon deciding to stop the vehicle for a seatbelt violation, Officer Cook ran the vehicle's license plate number [Doc. 88 p. 4].  He learned that the car was registered to a woman named Katie Miller, who had an outstanding felony warrant for her arrest [Doc. 88 p. 17; Doc. 91 p. 6].  Officer Cook stopped the vehicle on I-40 and approached the driver of the vehicle, obtaining her ID and identifying her as Katie Miller [Doc. 91 p. 6].  After confirming the existence of an arrest warrant for Ms. Miller, Officer Cook called for another officer to report to the scene [*id.*].

Officer Cook asked Ms. Miller to exit the car and come to the front of his police cruiser [*id.*]. He told her that he was arresting her on an outstanding warrant, handcuffed her, and asked whether she had anything illegal on her person [*id.*]. She said that the defendant had stuffed something down her pants, and when Officer Cook asked what it was, she said it was heroin [Doc. 88 p. 7; Doc. 91 p. 6–7]. At that time, Officer Cook decided that he would detain the defendant after he had secured Ms. Miller [Doc. 88 p. 8]. Officer Cook placed Ms. Miller in the back of his police cruiser and requested that a female officer report to the scene in order to search her [Doc. 88 p. 7–8; Doc. 91 p. 7].

Officer Cook then approached the defendant on the passenger side of Ms. Miller's car [Doc. 91 p. 7]. Up to that point in time, the defendant had been acting in a way that was "no more unusual than anybody else that is a little bit nervous" [Doc. 88 p. 20]. Officer Cook asked the defendant for identification [Doc. 91 p. 7]. The defendant appeared to be very nervous, and he stated that he did not have any identification with him [*id.*]. The defendant gave his name as J. Davis [Doc. 88 p. 20; Doc. 91 p. 7]. Nevertheless, the defendant continued to rummage around the front of Ms. Miller's car, as if still looking for his identification [Doc. 91 p. 7]. He twice stumbled in giving his Social Security Number [*id.*]. Based on the way the defendant was acting, Officer Cook suspected that the defendant had given him a false name [*id.*].

Officer Cook spoke with the defendant for a couple of minutes while waiting for another officer to arrive on scene [Doc. 88 p. 21]. Officer Gerlach arrived on scene and reported to the rear bumper of Officer Cook's cruiser, and Officer Cook asked the defendant to step out of the car in order to determine whether he was armed [Doc. 88 p.

3

9; Doc. 91 p. 7]. Based on his experience, Officer Cook believed that drugs and firearms usually go hand in hand [Doc. 88 p. 9]. When Officer Cook asked the defendant to step out of the vehicle, he had already decided to arrest the defendant "for the drugs" and for giving false identification [Doc. 88 p. 13–14, 21].

Officer Cook frisked the defendant and felt what he believed to be a large wad of cash in the pocket of the defendant's shorts [Doc. 91 p. 7]. Officer Cook did not remove the cash; instead, he handcuffed the defendant and placed him in the back of Officer Gerlach's police cruiser [*id.*]. Officer Cook did not tell the defendant that he was under arrest at that time [Doc. 88 p. 14]. A few minutes later, a female officer arrived on scene, searched Ms. Miller, and found heroin on her person [*id.*]. A K-9 unit subsequently arrived on scene, a police dog alerted on the car, and the car was searched [*id.*].

Based on the recording of the dashboard video camera on Officer Cook's police cruiser, approximately 25 minutes elapsed between the time that Officer Cook handcuffed the defendant and the police dog sniffed the car [Doc. 85, Hearing Ex. Plf. No. 1]. Approximately 34 minutes in total elapsed between the time that Officer Cook initiated the stop and the police dog arrived to sniff the car [*id.*]. After the search of the car, Officer Cook searched the defendant incident to his arrest and removed about $3,063 in cash, mostly in the form of $20 bills, from the defendant's pocket [*id.*].

Officer Cook later completed a warrant charging the defendant with "resale of heroin." [Doc. 88 p. 22]. As probable cause for the warrant, Officer Cook listed the defendant's nervousness, the statement of Ms. Miller that the defendant had put heroin in

4

her pants, and the cash found on the defendant [Doc. 88 p. 22–23]. Officer Cook did not charge the defendant with providing false identification [Doc. 88 p. 23].

In his original motion papers, the defendant argued that Officer Cook's frisk violated the Fourth Amendment because Officer Cook did not have reasonable suspicion, based on specific and articulatable facts, that the defendant was armed and dangerous [Doc. 79 p. 2–4; Doc. 90 p. 4–7]. The defendant also argued that regardless of whether the frisk was lawful, Officer Cook's seizure of the cash violated the Fourth Amendment because Officer Cook could not have immediately recognized from plain touch that the object he felt was cash in an amount to suggest it may have been contraband [Doc. 79 p. 5–6; Doc. 90 p. 8–9]. Finally, the defendant argued that Officer Cook's testimony about his probable cause to arrest the defendant was contradictory, thereby highlighting the "precariousness of his probable cause determination," and that the facts and circumstances of the traffic stop do not lead solely to the conclusion that the cash inevitably would have been discovered through a lawful search incident to arrest [Doc. 90 p. 9–10]. Thus, the defendant submitted, the cash should be suppressed.

In the R&R, Magistrate Judge Guyton found: (1) Officer Cook had reasonable suspicion, based on specific and articulatable facts, that the defendant was armed and dangerous, permitting him to lawfully frisk the defendant [Doc. 91 p. 9–14]; (2) during the frisk, Officer Cook felt what he recognized from the feel of the object to be a large amount of cash, and he could have seized it at the time of the frisk [Doc. 91 p. 14–17]; and (3) the cash was properly seized as a search incident to arrest, and the cash inevitably would have been discovered regardless of whether the frisk occurred [Doc. 91 p. 17–18].

5

### III. Analysis

The defendant's objections mostly restate his original arguments. Where, as in this case, an individual is seized under the Fourth Amendment, a law enforcement officer "must have a reasonable suspicion of criminal activity to justify a *Terry* stop, or probable cause to justify an arrest, in order for the seizure to comply with the Fourth Amendment." *United States v. Campbell*, 486 F.3d 949, 954 (6th Cir. 2007). Upon a careful and *de novo* review of the record and the law, the Court finds that the conclusions contained in the R&R are correct.

> A. <u>Officer Cook Had Reasonable Suspicion, Based on Specific and Articulatable Facts, That the Defendant Was Armed and Dangerous</u>

"When police officers make stops of individuals based on reasonable suspicion of criminal activity, they are said to have made a *Terry* stop." *Srisavath v. City of Brentwood*, 243 F. App'x 909, 913 (6th Cir. 2007) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). To justify a *Terry* stop, "the officer must be able to point to 'specific and articulable facts [that], taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Id.* (quoting *Terry*, 392 U.S. at 21). Officer safety is a legitimate interest in the context of a traffic stop, and a police officer may perform a pat-down search of an occupant of a vehicle on reasonable suspicion that the occupant is armed and dangerous. *United States v. Noble*, 762 F.3d 509, 521–22 (6th Cir. 2014).

The R&R found that Officer Cook had reasonable suspicion that the defendant was armed and dangerous based on the following pieces of information available to Officer Cook at the time he asked the defendant to step out of the vehicle: (1) Ms. Miller

had accused the defendant of hiding heroin in her pants; (2) the defendant appeared unusually nervous as evidenced by his continuing to look for identification after telling Officer Cook he had none; (3) Officer Cook suspected that the defendant had given a false name based on the defendant's actions; (4) the defendant stumbled twice in giving his Social Security number; and (5) Officer Cook knew from his experience that guns are often associated with drug activity [Doc. 91 p. 10].

The defendant argues that each of these facts, standing alone, would not provide reasonable suspicion that the defendant was armed and dangerous, and so together they also cannot provide such reasonable suspicion. "'Reasonable suspicion is based on the totality of the circumstances,'" *Noble*, 762 F.3d at 521 (quoting *Joshua v. DeWitt*, 341 F.3d 430, 443 (6th Cir. 2003)), and "it exists if 'a reasonably prudent [person] in the circumstances would be warranted in the belief that his [or her] safety or that of others was in danger.'" *Id.* at 521–22 (quoting *Terry*, 392 U.S. at 27). Thus, the R&R properly considered whether there was reasonable suspicion for the pat-down search of the defendant by taking an objective view of the totality of the circumstances known to Officer Cook at the time he performed the pat-down search.

Although the Sixth Circuit has cautioned that nervousness is an "unreliable" indicator of someone's dangerousness, the Sixth Circuit has not held that it is *per se* inappropriate to consider nervousness as a factor that may contribute to reasonable suspicion. *See Noble*, 762 F.3d at 522–23. For example, the Court in *Noble* afforded nervousness little weight in its reasonable suspicion analysis after specifically noting that

7

there was no evidence the defendant had become more nervous as the traffic stop progressed, or that he had failed to comply with any of the officers' commands. *Id.*

In this case, Officer Cook testified that prior to approaching the defendant on the passenger side of the vehicle—that is, during Officer Cook's interactions with Ms. Miller on the driver side of the vehicle—the defendant was acting "no more unusual than anybody else that is a little bit nervous" [Doc. 88 p. 20]. When describing the defendant's conduct during Officer Cook's later questioning about the defendant's identification, however, Officer Cook testified that the defendant acted "real nervous" [Doc. 88 p. 8]. Additionally, although the defendant told Officer Cook that he did not have any identification, the defendant acted in a manner inconsistent with that statement. The defendant continued rummaging around the front of Ms. Miller's car in an apparent attempt to find identification and had difficulty in giving his Social Security Number. In these circumstances, it is proper to consider nervousness as contributing to reasonable suspicion, even if it alone likely could not satisfy the reasonable suspicion standard.

In addition to the defendant's nervousness, Ms. Miller had told Officer Cook that the defendant put heroin in her pants. The weight that statements by third parties should be given in a Fourth Amendment analysis falls along a broad spectrum. On one end of the spectrum, an anonymous tip from an unknown location made by an unknown caller cannot form the basis for reasonable suspicion when there is no indicia of its reliability. *Florida v. J.L.*, 529 U.S. 266, 270 (2000). On the other end of the spectrum, an eyewitness statement made by a person whose honesty and reliability are not in doubt can

8

by itself form the basis of probable cause to arrest. *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999).

The crucial question under the law is whether there are sufficient indicia of reliability for the statement to be taken as evidence that meets the relevant burden under the Fourth Amendment. *See Alabama v. White*, 496 U.S. 325, 328–29 (1990). Highly relevant factors for determining the value of a declarant's statement include the declarant's veracity, reliability, and basis of knowledge. *Id.* Eyewitness statements are presumed to be reliable and truthful unless there is an apparent reason to believe that the eyewitness is lying, did not accurately describe what had been seen, or was in some way mistaken in his or her recollection. *Ahlers*, 188 F.3d at 370.

Here, Ms. Miller's statement that the defendant had put heroin in her pants falls closer to the eyewitness testimony side of the spectrum than the anonymous informant side of it. If Ms. Miller were telling the truth, there is every reason to believe she would have directly observed (and experienced) the defendant's actions, and been able to both accurately describe and correctly recall what happened. Thus, if Ms. Miller were telling the truth, her statement alone would have satisfied the higher standard of probable cause.

Ms. Miller's credibility is somewhat called into question by the fact that she was wanted on a felony arrest warrant. Additionally, if she believed that the discovery of heroin in her pants was inevitable because she was under arrest, she may have had a motive to falsely accuse someone else. In support of her credibility is the fact that her statement went against her interest by implicating her in a potential crime for which she was not under arrest. Additionally, the way in which she made her statement supports

9

her credibility. She first told Officer Cook only that the defendant had stuffed something in her pants. It was not until Officer Cook asked what it was that she mentioned it was heroin. Her apparent reluctance in making her statement reduces the likelihood that she was trying to falsely accuse the defendant.

Balancing all of these factors as indicia of reliability, Ms. Miller's statement provides a basis upon which a reasonably prudent person would have reason to believe that the defendant was personally involved in drug activity, especially when combined with the defendant's nervousness and his apparent false statement about his identity. Because Officer Cook knew from his experience that drugs and firearms are often found together, he had reason to believe the defendant was personally armed and dangerous. *See United States v. Bell*, 762 F.2d 495, 500–02 (6th Cir. 1985). Accordingly, Officer Cook had reasonable suspicion, based on specific and articulable facts, that the defendant was armed and dangerous. A pat-down search of the defendant in this context was reasonable to secure the legitimate interest of officer safety.

> B. <u>Officer Cook Immediately Recognized the Object He Felt as a Large Amount of Cash and Could Have Seized It Then under the Plain Touch Doctrine</u>

The plain touch doctrine provides that a defendant's Fourth Amendment rights are not violated when a police officer conducting an authorized pat-down search feels an object whose contour or mass makes its identity immediately apparent. *Minnesota v. Dickerson*, 508 U.S. 366, 375–76 (1993). If the object is contraband, it may be seized without a warrant. *Id.*

Here, the defendant objects that Officer Cook could not have recognized there was a large amount of cash in the defendant's pocket based on its plain feel, because in order to identify the cash, Officer Cook would have had to exceed the scope of the pat-down search by squeezing, sliding, or otherwise manipulating the contents of a pocket he knew did not contain a weapon. *Id.* at 378. The R&R properly found that Officer Cook immediately identified the cash based on its plain feel. Accordingly, as correctly explained in the R&R, Offcer Cook could have seized the cash during the pat-down search.

Officer Cook testified on direct examination that upon patting down the defendant, "[i]t was clear he had a substantial amount of cash in his pocket" [Doc. 88 p. 12]. On cross examination, the defendant asked only three questions about how Officer Cook knew that what he felt was cash, eliciting affirmative responses to each question: (1) "When you pat him down you immediately recognize what was a wad of cash?" (2) "That is by feeling?" and (3) "You grabbed on the wad of cash and knew it was cash. I guess that's how you knew?" [Doc. 88 p. 22]. Officer Cook's testimony supports the conclusion that the cash was immediately apparent based on its feel without any manipulation.

Additionally, as the R&R noted, the amount of cash discovered on the defendant also corroborates Officer Cook's testimony that he could immediately tell he had felt a large amount of cash. The defendant was carrying more than $3,000 in mostly $20 denominations. This amount of cash in such denominations would invariably produce a

11

large wad of cash. Moreover, its size would be indicative of a large amount of cash even if the cash had consisted of small denominations.

The defendant contends that Officer Cook's affirmative response to the question of whether he "grabbed on the wad of cash" demonstrates that Officer Cook had to manipulate the defendant's pockets in order to discern the cash. The entirety of the testimony, however, more strongly supports the conclusion that the cash was immediately apparent to Officer Cook without further manipulation. It is notable that the defendant raised the plain touch doctrine in his original motion papers [Doc. 79 p. 5–6] and had an opportunity to inquire into how Officer Cook could identify the cash based on its feel. The defendant did not do so in any detail at the hearing, and the evidence does not support his preferred interpretation of the facts. The R&R properly found that the cash was immediately apparent to Officer Cook based on its plain feel.

    C. <u>The Cash Was Seized in a Search Incident to a Lawful Arrest, and It Inevitably Would Have Been Discovered Even if the Frisk Was Unlawful</u>

No violation of the Fourth Amendment occurs when a person is searched, and evidence discovered on their person seized, incident to a lawful arrest. *Arizona v. Gant*, 556 U.S. 332, 338–39 (2009); *Chimel v. California*, 395 U.S. 752, 763 (1969). As the R&R correctly found, the cash in this case was seized incident to a lawful arrest. Additionally, evidence obtained in violation of the Fourth Amendment should not be suppressed if the tainted evidence inevitably would have been lawfully discovered. *United States v. Kennedy*, 61 F.3d 494, 499 (6th Cir. 1995). Accordingly, regardless of

whether the frisk and associated identification of cash was lawful, the cash should not be suppressed if the arrest would have been lawful in absence of the cash.

The defendant argues that the Court should not attempt to "predict the events following the arrest of Mr. Jackson" [Doc. 94 p. 5].  When applying the inevitable discovery doctrine, the Court predicts what would have happened if the unlawful search had been suspended, focusing on "'demonstrated historical facts capable of ready verification or impeachment.'"  *United States v. Bowden*, 240 F. App'x 56, 61 (6th Cir. 2007) (quoting *United States v. Ford*, 184 F.3d 566, 577 (6th Cir. 1999)).

Here, Officer Cook testified that he intended to arrest the defendant when he asked the defendant to step out of the car.  Officer Cook then frisked the defendant and identified the cash by its feel.  He put the defendant in handcuffs in the back of a police cruiser.  Officers then found heroin on Ms. Miller, and a police dog alerted to the presence of drugs in her car.  Lastly, officers removed the cash from the defendant's pocket.  There is no question that the defendant was in fact arrested.  Accordingly, the demonstrated historical facts of this case leave little doubt that the defendant would have been arrested even if the frisk had never occurred.

"'[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed.'"  *United States v. Marrero*, 651 F.3d 453, 468 (6th Cir. 2011) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)).  Probable cause exists when facts and circumstances are "within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown,

13

that the suspect has committed, is committing, or is about to commit an offense." *Alman v. Reed*, 703 F.3d 887, 896 (6th Cir. 2013) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)) (internal quotation marks omitted). "The establishment of probable cause 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *United States v. Moncivais*, 401 F.3d 751, 756 (6th Cir. 2005) (quoting *United States v. Barrett*, 890 F.2d 855, 861 (6th Cir. 1989)).

The defendant argues that Officer Cook's testimony was contradictory regarding his perception of probable cause, and therefore his testimony regarding probable cause should be given little weight. The defendant also argues that the Court should objectively view the conduct and reasoning of Officer Cook at the time the seizure of the cash and the arrest occurred.

In determining whether a police officer had probable cause to make an arrest, the Court takes an objective view of the evidence known to the officer at the time, rather than inquiring into the officer's subjective beliefs. *Devenpeck*, 543 U.S. at 153. A police officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Id.*; *see United States v. Abdi*, 463 F.3d 547, 557–60 (6th Cir. 2006) (applying the rule in the context of a challenged arrest on immigration charges when there was probable cause to arrest on terrorism charges). Thus, evidence should not be suppressed under the Fourth Amendment when there was objective probable cause for an arrest, even if police believed there was not probable cause. *Norris v. Lester*, 545 F. App'x 320, 325 (6th Cir. 2013).

14

According to Officer Cook, the defendant was arrested for "resale of heroin." It is a felony in Tennessee for a person to "knowingly . . . (3) sell a controlled substance; or (4) possess a controlled substance with intent to manufacture, deliver or sell the controlled substance." Tenn. Code Ann. § 39-17-417. Heroin is a Schedule I controlled substance. Tenn. Code Ann. § 39-17-406(c)(11). Tennessee law penalizes constructive possession the same as actual possession. *State v. Robinson*, 400 S.W.3d 529, 534 (Tenn. 2013). Additionally, it is a misdemeanor in Tennessee for a person to "knowingly possess or casually exchange a controlled substance, unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of professional practice." Tenn. Code Ann. § 39-17-418. A police officer may warrantlessly arrest a person for a misdemeanor offense in Tennessee if the offense was committed in the officer's presence, and for a felony offense at any time. Tenn. Code. Ann. § 40-7-103.[1]

The defendant's argument in support of his objection suggests that he believes the arrest occurred when he was handcuffed after the pat-down search [Doc. 94 p. 6]. At the moment that Officer Cook put the defendant in handcuffs, he knew Ms. Miller had stated that the defendant put heroin in her pants, the defendant was acting nervously, the defendant's actions were inconsistent with his statement that he did not have identification and was named "J. Davis," and the defendant had a large amount of cash in his pocket. On this evidence, Officer Cook had probable cause to arrest the defendant for the felony offense of possessing with intent to deliver or sell heroin.

---

[1] A person cannot be arrested for a seatbelt violation. Tenn. Code Ann. § 55-9-603(f)(1).

15

Moreover, the cash on the defendant would have been discovered even if the frisk had never occurred. Considering the relevant events, the arrest was the "result of a fluid process that cannot easily be divided into a rigid chronological sequence." *United States v. Williams*, 170 F. App'x 399, 405 (6th Cir. 2006). At the moment that Officer Cook asked the defendant to step out of the vehicle, prior to the frisk, Officer Cook had reasonable suspicion that the defendant was engaged in criminal activity.

If a police officer develops reasonable suspicion during a lawful traffic stop that occupants of a vehicle are engaged in criminal activity, the officer may lawfully detain the occupants in a reasonable manner and for reasonable period of time in order to investigate further. *United States v. Davis*, 430 F.3d 345, 353–55 (6th Cir. 2005); *United States v. Hill*, 195 F.3d 258, 267–75 (6th Cir. 1999). Even if the defendant could not have been placed under arrest at the time he was handcuffed, it still would have been reasonable under the circumstances of this case for Officer Cook to detain the defendant in the back of a police cruiser on scene while police investigated Ms. Miller and her car. *See United States v. Shank*, 543 F.3d 309, 314 (6th Cir. 2008) (citing *United States v. Bradshaw*, 102 F.3d 204, 212 (6th Cir. 1996)) (detention of a suspect in a police cruiser during a traffic stop does not automatically constitute an arrest if the detention is within the lawful scope of the stop); *see also Davis*, 430 F.3d at 355 (it was reasonable to detain the defendant for 30 minutes in order to bring a police dog to sniff his car for drugs).

After completing this further investigation, Officer Cook and the law enforcement officials on scene would have discovered that Ms. Miller did in fact have heroin in her pants during the time that Officer Cook had observed her sitting in the car with the

16

defendant, and that a police dog had alerted to the presence of drugs in the car. Therefore, Officer Cook would have had concrete evidence, which he personally observed, that the defendant was present in a vehicle containing heroin over which the defendant, in combination with Ms. Miller, exercised dominion or control. This information, combined with the other facts Officer Cook uncovered irrespective of the pat-down, would have provided Officer Cook with probable cause to arrest the defendant. *See Maryland v. Pringle*, 540 U.S. 366, 371–72 (2003) (finding probable cause to arrest each occupant of a vehicle for possessing drugs found in its cabin when it was unclear which occupant—or all three—possessed the drugs); *State v. Ash*, 12 S.W.3d 800, 804–06 (Tenn. Crim. App. 1999) (collecting cases on, and discussing, when a misdemeanor has been committed in an officer's presence in Tennessee).

Accordingly, the cash was lawfully seized in a search incident to arrest, and even if the frisk had not occurred, the cash inevitably would have been discovered.

## IV. Conclusion

For these reasons, the defendant's objections [Doc. 94] are **OVERRULED.** The Court **ACCEPTS in whole** the R&R [Doc. 91] and incorporates it into this Memorandum Opinion and Order. Accordingly, the defendant's Motion to Suppress Evidence [Doc. 79] is **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan  
CHIEF UNITED STATES DISTRICT JUDGE