LORENZA JACKSON,                    )
                                    )
        Petitioner,                 )
                                    )
v.                                  )        Nos.:  3:13-CR-145-TAV-HBG
                                    )               3:18-CV-74-TAV-HBG
UNITED STATES OF AMERICA,           )
                                    )
        Respondent.                 )

## MEMORANDUM OPINION

Petitioner Lorenza Jackson has filed a pro se motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [Doc. 1].  The government has responded in opposition [Doc. 4], and Petitioner replied [Doc 5].  Petitioner also submitted two supplements [Docs 9, 18], two motions to amend [Docs. 10, 11] with a subsequent motion to withdraw [Doc. 14] those motions, and a final motion to supplement [Doc. 15].  For good cause, Petitioner's motion to withdraw the motions to amend [Doc. 14] is **GRANTED**.  The Clerk is **DIRECTED** to remove Petitioner's motions [Docs. 10, 11] from the electronic filing system.  Additionally, the motion to supplement [Doc. 15] is **GRANTED**.  Finally, because, based on the record before the Court, it plainly appears that Petitioner is not entitled to relief, it is not necessary to hold an evidentiary hearing,[1] his petition for relief under 28 U.S.C. § 2255 will be **DENIED**.

---

[1] An evidentiary hearing is required on a § 2255 motion unless the motion, files, and record conclusively show that the prisoner is not entitled to relief.  *See* 28 U.S.C. § 2255(b).  It is the prisoner's ultimate burden to sustain his claims by a preponderance of the evidence.  *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).  Accordingly, where "the record conclusively shows that the petitioner is entitled to no relief," a hearing is not required.  *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citation omitted).

## I.     Background[2]

In September 2013, a Knoxville Police Department Officer pulled over a car for a seatbelt violation [Doc. 88 p. 4–5].  The occupants of the car were Petitioner and Kattie Miller, an individual for whom there was an outstanding felony arrest warrant [*Id.*].  After arresting Miller, the officer asked if she had anything illegal on her person, and she told the officer that Petitioner stuffed heroin in her pants [*Id.* p. 7].[3]  After further interactions with Petitioner wherein he acted nervous and fumbled with his belongings, the officer believed he may have been armed, frisked him for weapons, and felt a "substantial amount of cash" in Petitioner's pocket [*Id* p. 8, 11–12].  Officers searched the car when a drug detection dog alerted to the vehicle, and they found a set of scales, a box of baggies, and a bag containing empty capsules of the same kind found on Miller, which contained heroin [Doc. 164 p. 114].  Petitioner was taken into custody and charged with selling heroin [Doc. 88 p. 22].

Petitioner was indicted by a grand jury, along with three others in the conspiracy, including his brother, Christopher Jackson [Doc. 7].  His brother pleaded guilty and decided to cooperate with law enforcement officials [Doc. 165 p. 45].  Petitioner's case went to trial, where Miller and Petitioner's brother testified against him, among other witnesses [Doc 165].  Petitioner was found guilty of conspiring to distribute at least 100 grams of heroin from September 1, 2011 to October 15, 2013, and possessing with intent to distribute heroin on September 14, 2013 [Doc. 110].  He was sentenced to 262 months' imprisonment [Doc. 158].

---

[2] Document numbers in this section refer to the criminal case, 3:13-CR-145-4.

[3] The Court notes that Petitioner maintains that he did not put heroin in Miller's pants.

2

Petitioner appealed [Doc. 160], challenging the Court's suppression ruling and admission of testimony about his conversations with co-conspirators. The Sixth Circuit affirmed Petitioner's conviction and sentence [Doc. 177]. The Supreme Court denied Petitioner's request for a writ of certiorari [Doc. 181], and his conviction became final. Petitioner then timely filed the instant motion, seeking relief under 28 U.S.C. § 2255 [Doc. 193].[4]

## II. Analysis

Petitioner raises fourteen (14) ineffective assistance of counsel claims in addition to two (2) claims of prosecutorial misconduct. Pursuant to these claims, Petitioner files this collateral attack. The Court must vacate, set aside, or correct a prisoner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack . . . ." 28 U.S.C. § 2255. To obtain relief under § 2255 because of a constitutional error, the error must be one of "constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). A § 2255 petitioner has the burden of proving that he is entitled to relief by a preponderance of the

---

[4] Petitioner also filed a supplement [Doc. 9], Motion for Leave to Amend § 2255 Motion [Doc. 10], and a Motion for Leave to File Motion to Amend Pending 28 U.S.C. 2255 Motion [Doc. 11]. All present arguments regarding the Sixth Circuit ruling in *United States v. Havis*, 927 F.3d 382, 383 (6th Cir. 2019) (en banc). Petitioner then filed a Motion to Withdraw Motion to Amend Pending § 2255 [Doc. 14]. Accordingly, Petitioner's Motion to Withdraw is **GRANTED**. The Clerk is **DIRECTED** to remove Petitioner's motions [Docs. 10, 11] from the electronic filing system.

evidence, *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006), and must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 153 (1982). Because Petitioner fails to clear such a hurdle, none of Petitioner's claims justify relief.

### A. Ineffective Assistance of Counsel

Petitioner asserts a variety of ineffective assistance claims, namely failure to: (1) challenge the propriety of the traffic stop in the suppression motion; (2) challenge the criminal complaint; (3) object to allegedly perjurious testimony from Officer Cook when questioned by the government; (4) impeach Miller using evidence from her telephone; (5) object to hearsay testimony from Petitioner's brother; (6) object to speculative testimony from Petitioner's brother; (7) interview potential defense witnesses; (8) file a motion in limine to prevent Miller from testifying that Petitioner put heroin down her pants; (9) file a motion in limine to limit the testimony of Officer Jinks; (10) challenge Miller's statements about Petitioner stuffing heroin down her pants, thereby eliciting prejudicial testimony; (11) communicate and adequately prepare for trial; (12) make closing arguments only based on the evidence, instead of presenting false information; (13) investigate the issues; (14) challenge the government's case and the credibility of its witnesses with readily available evidence [Doc. 1 p. 6–11].

Claims of ineffective assistance of counsel are cognizable under § 2255. *Massaro v. United States*, 538 U.S. 500, 508–09 (2003). The Sixth Amendment guarantees criminal defendants the right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner alleging ineffective assistance of counsel must fulfill

4

two criteria in either order. First, a petitioner must establish that his counsel's performance was deficient, that is, falling "below an objective standard of reasonableness . . . under prevailing professional norms." *Id.* at 688. Consequently, counsel is "not required to raise meritless arguments." *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998). Counsel is presumed to have provided effective assistance, and petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003); *Strickland*, 466 U.S. at 689.

Second, a petitioner must show that his attorney's deficient performance prejudiced his defense, in the sense that defendant must show "there is a reasonable probability that, but for counsel's [] errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. If a petitioner fails to establish both deficiency and prejudice, the claim must be rejected. *Id.* at 697. Thus, "the inability to prove either one of the prongs – regardless of which one – relieves the court of any duty to consider the other." *Nichols v. United States*, 563 F.3d 240, 249 (6th Cir. 2009) (*en banc*). None of Petitioner's claims offer relief.

### 1.     Preliminary Events

Petitioner's first two claims relate to the initiation of the case. Petitioner first argues that counsel failed to challenge the propriety of the traffic stop since counsel knew Petitioner was wearing a seatbelt. Petitioner argues Officer Cook could not specify where he observed

5

the seatbelt violation, and had the traffic stop been challenged, major evidence against Petitioner could have been suppressed, changing the outcome of the trial [Doc. 1 p. 6].

On August 28, 2014, Magistrate Judge H. Bruce Guyton held a hearing on defendant's motion to suppress money seized from Petitioner after a pat down [Docs. 79, 84]. At the hearing, Officer Cook testified that he saw Petitioner in the car without a seatbelt [Doc. 88 p. 4]. While not a direct challenge to the traffic stop itself, counsel for Petitioner had the opportunity to cross-examine Officer Cook on this matter. Nevertheless, the observation provided probable cause to stop the vehicle for committing a traffic offense. *See Whren v. United States*, 517 U.S. 806, 810 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."); *United States v. Street*, 614 F.3d 228, 232 (6th Cir. 2010) (holding that officers witnessing a seatbelt violation may properly stop the car); *see also* Tenn. Code Ann. § 55-9-603 (providing that drivers and front seat passengers must wear a seatbelt at all times that the vehicle is moving forward). Because any challenge to the traffic stop would have been unsuccessful, Petitioner cannot demonstrate that his attorney's deficient performance prejudiced his defense.

Petitioner also argues counsel failed to challenge the criminal complaint on the grounds that it does not establish probable cause for his involvement in the conspiracy. In the alternative, Petitioner argues the arrest was unconstitutional because the affiant had no personal knowledge of Petitioner and the affidavit contained "misleading information" and "deliberate falsehood[s]" [Doc. 1 p. 6]. Petitioner provides no further elaboration on what information was misleading or false, or reasons why both the federal magistrate judge and the

6

grand jury were incorrect in finding probable cause to believe Petitioner had committed these offenses.  Petitioner was convicted pursuant to the indictment, and "counsel cannot be deficient for failing to challenge a criminal complaint supplanted by an indictment." *Augustin v. United States*, No. 1:09-CR-187, 2018 WL 4323913, at *9 (E.D. Tenn. Sept. 10, 2018).  Even assuming failure to challenge the criminal complaint constituted deficient performance, Petitioner has not alleged any prejudice that stemmed from such an error.  Thus, this challenge would have also been unsuccessful.

For the reasons discussed, the Court finds all of Petitioner's claims related to these preliminary events to be without merit, and these claims will therefore be denied.

### 2. Preparation for Trial

Petitioner makes several other claims regarding counsel's preparation for trial. However, these claims are conclusory and do not provide sufficient detail to prove by a preponderance of the evidence that Petitioner is entitled to relief.  *See O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961) ("Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing.").

First, Petitioner argues that counsel failed to interview potential witnesses and investigate the issues.  "Under *Strickland*, 'counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'"  *Stermer v. Warren*, 959 F.3d 704, 739 (6th Cir. 2020) (quoting *Strickland*, 466 U.S. at 691).  A petitioner is entitled to relief based on a violation of this duty only upon a showing of prejudice, that is, a reasonable probability that, but for counsel's deficient

7

performance, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 694.

However, Petitioner does not identify what issues counsel did not investigate or what testimony or exculpatory evidence may have been elicited from the witnesses.[5] The affidavit in support states two of Miller's contacts "could have had beneficial or even exculpatory evidence" without identifying what information they have or how such evidence would have led to a different verdict [Doc. 2 p. 8]. "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *United States v. Cole*, 359 F.3d 420, 428 n.13 (6th Cir. 2004) (citation omitted). Thus, without any facts to support a notion of ineffectiveness or prejudice, these claims are meritless. *United States v. Robson*, 307 F. App'x 907, 911 (6th Cir. 2009) (declining to review a claim that counsel was ineffective for not conducting further investigation where the record did not show what information could have been further investigated, what that investigation would have shown, or how it might have alternated the outcome).

---

[5] Petitioner states that these unidentified witnesses in Miller's phone text logs and call history purchased heroin from Miller, not from Petitioner, and this information therefore would undermine Miller's credibility [Doc. 1 p. 8]. Since Miller already admitted to her involvement in the federal conspiracy distributing drugs, it is unclear what value this testimony would provide. At the beginning of her direct examination, Miller stated she was in jail for conspiracy to manufacture, sell, deliver or possess heroin, a Schedule I controlled substance, and that she was testifying about her information in that conspiracy [3:13-cr-145, Doc. 165 p. 3–4]. In his reply, Petitioner states that the evidence would have tied the heroin found on Miller during the traffic stop to her own sales, when there was "no such evidence tied to petitioner" [Doc. 5 p. 4]. This argument is very similar to another claim Petitioner raised, that counsel did not adequately impeach Miller, which is addressed later in this opinion. However, that Kattie Miller may have also been selling heroin is of no consequence to whether Petitioner was involved, nor would this evidence identify the origins or ownership of this particular heroin found during the stop. Petitioner fails to identify how this evidence would exculpate him, and therefore does not demonstrate prejudice.

8

Second, Petitioner argues counsel failed to communicate with Petitioner and adequately prepare for trial. Petitioner states counsel did not advise him that the case strategy had changed and that counsel "failed to abide by petitioner's decision to testify" [Doc. 1 p. 10]. Petitioner fails to show prejudice as to changes in case strategy or issues to present at trial, as he does not identify the old strategy or how the new strategy fell below professional norms. Petitioner now claims he decided to testify, but there is "a strong presumption that trial counsel adhered to the requirements of professional conduct and left the final decision about whether to testify with the client. To overcome this presumption, [Petitioner] would need to present record evidence that he somehow alerted the trial court to his desire to testify." *Hodge v. Haeberlin*, 579 F.3d 627, 639 (6th Cir. 2009) (citation omitted). Petitioner's "present allegations that he wanted to testify and was prevented from doing so do not suffice to overcome the presumption that he assented to the tactical decision that he not testify." *Id*.

Third, Petitioner claims counsel was ineffective for failing to file a motion in limine to limit Officer Jink's testimony [Doc. 1 p. 9]. Petitioner states Officer Jink made statements that were not probative of Petitioner's guilt and were irrelevant without identifying which statements were irrelevant or how such statements were prejudicial. He therefore fails to highlight any deficient performance or any resulting prejudice.

Each of Petitioner's claims regarding preparation for trial are without merit as he is unable to fulfill either of the *Strickland* prongs on each claim.

### 3.  Trial

Petitioner makes a variety of claims regarding counsel's performance at trial, primarily that counsel did not object at several points, failed to impeach or challenge witnesses, and

made a statement during closing argument that was unsupported by evidence. Each of these claims regarding counsel's performance at trial are without merit.

First, Petitioner states that counsel did not object to allegedly perjurious testimony from Officer Cook when "[Officer Cook] testified that Kattie Miller told him that Petitioner stuffed heroin in her pants" but previously had sworn in an affidavit that "Miller told him [Petitioner] handed her the heroin and told Miller to conceal it" when both cannot be true [Doc. 1 p. 6]. Petitioner offers no evidence to indicate the testimony was false or that Officer Cook altered statements between what he was told and what he repeated in court. In fact, it is consistent with two of Miller's statements, wherein she testified first that Petitioner "pulled out the heroin and said here, put this -- and put it in my sweatpants" and later testified that she "had the heroin on me that Lorenza Jackson put in my pants" [3:13-cr-145, Doc. 165 p. 15, 28].

Second, Petitioner states counsel failed to impeach Miller with evidence from her phone or for the slight variations in her previously mentioned testimony. Petitioner states had counsel introduced the phone, the jury would have had evidence of Miller's distribution of heroin which would undermine her credibility. The phone was not introduced, but she did testify of her involvement of the conspiracy [3:13-cr-145, Doc. 165 p. 3–5]. In his reply, Petitioner states that the evidence from Miller's phone would have tied the heroin on her person to Miller rather than to Petitioner [Doc. 5 p. 4]. This argument parallels an argument addressed above wherein Petitioner wished to illicit testimony from additional witnesses regarding Miller's dealings. Records of calls being made or texts with others to coordinate drug sales do not identify the source of any heroin found during the traffic stop, nor do Miller's own dealings preclude the involvement of Petitioner in the overall conspiracy.

10

Additionally, Petitioner states counsel should have impeached Miller for her testimony where she initially stated Petitioner handed heroin to her and told her to conceal it but later testified that Petitioner stuffed the heroin in her pants [Doc 1 p. 7]. Petitioner states this is proof of willful intent to provide false testimony. However, these are not inconsistent stories but may simply represent a sequence of events. The Court declines to take a position on this matter, because whether it was a disparity in the storytelling or a sequence of events, Petitioner fails to identify how the outcome of the trial would have changed, as in both versions, Petitioner originally possessed the heroin. The impact on the jury's view of her credibility is not likely to have been so significant as to undermine confidence in the outcome of the trial. Petitioner fails to identify what further impeachment value the phone evidence or questioning regarding the timeline of events would have had over what was already offered or that such an approach was outside of professional norms.

Third, Petitioner states counsel was ineffective for failing to object to hearsay testimony by Petitioner's brother when he testified that co-defendants told him Petitioner took heroin and a phone from his apartment. Petitioner states this statement was the only connection between the heroin at the apartment and the heroin found on Miller. Counsel's failure to object, Petitioner argues, allowed the jury to infer it was the same substance. However, this statement was admitted as a non-hearsay co-conspirator statement pursuant to Federal Rule of Evidence 801(d)(2)(E). *United States v. Jackson*, 663 F. App'x 426, 429 (6th Cir. 2016). Thus, there is no basis for an objection to this testimony.

11

Fourth, Petitioner states counsel failed to object to speculative testimony from his brother regarding whether Miller would have taken heroin from the apartment. When asked if it would have been normal for Miller to hold that amount of heroin, the brother said "No . . . . She is a user. Nobody would give her that amount of heroin to hold. That is highly odd" [3:13-cr-145, Doc. 165 p. 65]. When asked if Miller would have gone into the apartment, taken the heroin and walked out, the brother stated "I don't believe she would have done nothing like that. She was in there all the time" [*Id*. p. 66]. Such testimony was therefore based on his experience with her as a co-conspirator and with other users. Petitioner thus does not identify how counsel may have objected to this testimony.

Fifth, Petitioner claims counsel was ineffective for sharing information during closing argument that "had no evidence" to support it, thus prejudicing the jurors because they may have thought that he lied [Doc. 1 p. 10]. Petitioner states counsel said "Kattie Miller had to get up and deliver heroin because [Petitioner's brother] was out of town" when Petitioner knew this information was false [*Id.*]. However, Petitioner's brother testified that he was not in Knoxville on that day and had made a trip to Las Vegas on September 14, 2013, the day of the traffic stop [3:13-cr-145, Doc. 165 p. 61]. Miller stated she gave Petitioner a ride to sell heroin a couple of times that day [*Id*. p. 12]. At closing argument, counsel for defendant said "[s]he got up, she got her stuff, she had errands to run. Christopher was out of town. She was to deliver" [*Id*. p. 154]. Petitioner has not shown that this description of the facts given the previous testimony was inaccurate. He does not meet the performance or the prejudice prong as he fails to demonstrate an error or how the outcome may have been different given the jury was unlikely to perceive a lie.

12

Sixth, Petitioner claims counsel should have challenged the credibility of government witnesses given their motivation to cooperate to get a lighter sentence. Petitioner states the jury was unable to accurately assess their credibility as counsel did not impeach them with "readily available evidence contained in the discovery" [Doc. 1 p. 11]. Petitioner mentions evidence was "contained in the discovery" or that there were "files of the discovery" that could have changed the outcome of the trial without identifying such evidence and what it may have demonstrated. In a subsequent motion to supplement [Doc. 15],[6] Petitioner states he refers to the dashboard camera video which would show "no movement that would suggest that Petitioner stuffed anything down Miller's pants . . . . Millers' [sic] initial statement would also be recorded contradicting Miller and Officer Cook's testimony" [*Id.*]. However, Petitioner's arguments regarding the content of the recording are not proper for this Court to consider. Petitioner's first-hand account of events as contained in the briefing may be considered, but his account of what the dashboard camera recording contains may not, as he would need to offer the original recording pursuant to Federal Rule of Evidence 1002. Thus, his arguments that counsel failed to challenge the government witnesses with readily available evidence are too general to fulfill either of the *Strickland* prongs. To the extent Petitioner makes arguments

---

[6] Proposed amendments and supplements to a § 2255 motion must be filed within § 2255(f)'s one-year statute of limitations. The Court recognizes that a claim raised in an untimely supplemental pleading can be deemed to have been filed on the same date of a timely original § 2255 motion if the supplemental claim "relates back" to the original § 2255 motion. Fed. R. Civ. P. 15(c). In the § 2255 context, an untimely motion to amend or supplement does not "relate back" if it raises a new ground for relief involving different facts than those claims raised in the original § 2255 motion. *Mayle v. Felix*, 545 U.S. 644, 650 (2005). Here, Petitioner seeks to clarify what evidence was referenced in the original petition which relates back to his original claim fourteen (14). The motion to supplement [Doc. 15] is therefore **GRANTED**.

13

about whether or not he placed the drugs in Miller's pants, they will be addressed in the next section.

All such claims regarding counsel's performance at trial are without merit.

### 4. Other Claims

Several of Petitioner's claims revolve around Miller's statement that Petitioner put heroin in her pants. This includes claim eight (8) where Petitioner states counsel should have filed a motion in limine to prevent such testimony and claims four (4), ten (10), and fourteen (14) where Petitioner believes counsel should have challenged Miller and other witness testimony to weaken their credibility or at least demonstrate the defense had not "conceded to the issues" [Doc. 1 p. 9].

Petitioner only offers his own statements as evidence that said testimony is untrue and provides neither a basis for exclusion through a motion in limine nor a way the statements may have been challenged. With all of these claims, Petitioner fails to prove prejudice, as they were not the only evidence of guilt. As outlined in the government's response, Petitioner had brought drugs to Knoxville for several years [3:13-CR-145-4, Doc. 165 p. 47–49, 82–83], others had agreed to help Petitioner sell heroin to customers in Knoxville and had observed such sales [*Id.* p. 6–7, 47–61], and co-conspirators testified extensively about his involvement in the conspiracy [*See generally id.*]. Petitioner fails to demonstrate how the result of the trial would have been different had such testimony about the heroin in Miller's pants been challenged. Claims based on the exclusion, challenging, or veracity of the testimony that Petitioner put heroin in Miller's pants are therefore without merit.

14

Petitioner also in his reply discusses the cumulative effect of counsel's errors.[7]  "In order to obtain a new trial based upon cumulative error, a defendant must show that the combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair."  *United States v. Trujillo*, 376 F.3d 593, 614 (6th Cir. 2004) (citation omitted).  However, the Court here finds that none of plaintiffs alleged errors, individually or together, "produce[d] a trial setting that [was] fundamentally unfair." *Id*.

### B.      Prosecutorial Misconduct

Petitioner also makes two prosecutorial misconduct claims, namely that the prosecution presented false testimony about Petitioner stuffing heroin down Miller's pants and that the prosecution "vouched" for the credibility of witnesses during closing arguments [Doc. 1 p. 11–12].  Petitioner states that the government implied it was in a "special position to ascertain whether the witnesses were lying or not" because the prosecutor stated the witnesses would not receive the benefit of cooperation if they lied.  Petitioner also asserts various statements made by the government during closing arguments bolstered its witnesses: that Miller's testimony at trial was consistent with her statement to police; Petitioner started the conspiracy in 2011; Petitioner is not someone who got extra money from a job; and Petitioner's brother received a customer list from Petitioner on a napkin.  Petitioner states these were unsupported by evidence and "meant to mislead the jury" [Doc. 1 p. 12].

---

[7] Petitioner filed a supplement [Doc. 18] explaining that he believes counsel's actions were motivated by racial discrimination and that there was a "hands off policy" for the white witnesses, resulting in counsel not refuting their testimony [p. 2].  The supplement states he is hopeful the Court will be fair.  Petitioner does not appear to allege any additional claims, instead providing what he believes to be the reason for and background regarding the prior alleged ineffective actions addressed elsewhere in this opinion.

15

When evaluating this type of claim "a court must first consider whether the prosecutor's conduct and remarks were improper." *United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001) (citing *United States v. Carroll*, 26 F.3d 1380, 1387 (6th Cir. 1994)). But every improper statement does not warrant relief; rather, "[i]n order to constitute the denial of a fair trial, prosecutorial misconduct must be so pronounced and persistent that it permeates the entire atmosphere of the trial." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir.1997) (internal quotation marks omitted). Courts are to "consider the prosecutor's remarks within the context of the entire trial to determine whether any improper remarks resulted in prejudicial error." *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008).

First, Petitioner's claim regarding the presentation of false testimony has no merit. As previously discussed, Petitioner has provided no evidence that any witness falsely testified regarding whether Petitioner put heroin in Miller's pants. Even further, Petitioner does not demonstrate that the prosecution knew of its falsity before pursuing such lines of questioning. Petitioner therefore fails to identify any misconduct.

Second, Petitioner's claims about the prosecution bolstering the credibility of witnesses during closing argument are also without merit. "[P]rosecutors can argue the record, highlight the inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence," but "they can not put forth their opinions as to credibility of a witness [or] guilt of a defendant." *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005). Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating his personal belief or referring to evidence outside the record. *See Trujillo*, 376 F.3d at 607. "Prosecutorial vouching rarely warrants a new trial" in any event, *Smith v. Jones*, 326 F. App'x 324, 328 (6th

Cir. 2009), and nothing of the sort happened here. Additionally, courts are to "afford wide latitude to a prosecutor during closing argument, analyzing disputed comments in the context of the trial as a whole." *United States v. Henry*, 545 F.3d 367, 377 (6th Cir. 2008). The statements Petitioner highlights here were not an implication that unavailable information would have corroborated a witness's testimony or otherwise proved Petitioner's guilt which was held impermissible in *Washington v. Hofbauer*, 228 F.3d 689, 701 (6th Cir. 2000).

First, the government mentioned part of the witness's plea agreements which included requiring them to testify truthfully.[8] The Sixth Circuit has held that such discussion of plea agreements is permissible. *Trujillo*, 376 F.3d at 609; *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999) ("We have allowed a prosecutor to refer to the plea agreement of a testifying witness. The prosecutor may elicit testimony about its terms, . . . [and] refer to the plea agreement of a government witness in an attempt to deflect defense counsel's use of the agreement to attack the witness's credibility."). Petitioner states that such improper vouching occurred because the prosecutor placed the prestige of the government behind the witness by stating that the witness would be in jeopardy if the Court or government found the testimony untruthful [Doc. 5 p. 8 (citing *United States v. Carroll*, 26 F.3d, at 1389)].

---

[8] Counsel for the government stated:

There is no reason for Kattie Miller to lie either here or when she was interviewed by the police. What happens if she lies? What happens to Christopher Jackson if he lies? They don't get the benefit of cooperation. The judge will tell you that it's okay for people to make agreements with the government to cooperate and to hope that they might get something out of it. Part of that is that they have to tell the truth. They can't come in here and lie and then expect to get any benefit. In fact, usually that makes things worse.

[3:13-cr-145, Doc. 165 p. 159].

17

However, the government's statements were not improper vouching. Instead, the statements highlighted provisions of the witnesses' plea agreements and the commonsense consequences of perjury. The government mentioned that plea agreements have cooperation provisions, as permissible under *Francis*, 170 F.3d, at 550, and then invited the jury to draw their own conclusions about the truth of the testimony.[9] The comments made were not implying knowledge outside of the record or stating personal beliefs of the credibility of the witnesses. The government was drawing inferences from the evidence, as was defense counsel.[10] While Petitioner argues that such statements implied the witness was in jeopardy,

---

[9] Counsel for the government stated:

What you have is consistent statements from both Kattie Miller and Christopher Jackson. They haven't had contact with each other. The only way those statements are consistent is because they both in fact are telling the truth. . . . If you look at all the evidence and you listen to the testimony, you know that Christopher Jackson did not want to be here, did not want to be testifying against his brother, but he knew that he had to do the right thing and he had to tell the truth and he did. Kattie Miller had to tell the truth and she did.

[3:13-cr-145, Doc. 165 p. 159–161].

[10] Counsel for Petitioner discussed the plea agreement of Petitioner's brother, stating:

You start hearing this jail door slam back and forth and he signed a plea agreement, a cooperation plea agreement that is going to put him in federal prison for the next 25 years. As he said, mandatory minimum. That's a long time. He has been there two and at two years he said he would have done anything to get out of there. By that time he has talked to the authorities several times and he knows Kattie has pointed the finger at Lorenza and that he can help himself out even further if he takes the stand and points his finger too. That is all he has to do is point his finger, fill in some facts. And he lied before and he decides to do it again.

[3:13-cr-145, Doc. 165 p. 156].

18

the Sixth Circuit has upheld comments during closing argument where the government made far more explicit connections regarding the consequences of lying.  *United States v. Thomas*, 29 F. App'x 241, 245 (6th Cir. 2002) ("Why not just say who really did it? Why not just say that? Wouldn't that be the easiest thing? Just say it was somebody else.  Don't lose your plea agreement.  You may lose your plea agreement if you do not tell the truth." (citing *United States v. Renteria*, 106 F.3d 765 (7th Cir.1997) ("Well, what's their incentive to tell the truth now? If they lie, they lose that deal.  They have more incentive to tell the truth now than anyone else did because if they lie, they don't get any deal.  They've blown it all.")))).  The parties questioned the witness and argued about the implication of the plea agreement, and in so doing, both sides presented the jury with information from which they may draw their own conclusions.  The government's statements did not constitute improper vouching and there was therefore no misconduct.

Second, Petitioner alleges that the prosecution's statement that Miller's testimony was consistent with her statement to police [3:13-cr-145, Doc. 165 p. 150–151] was not true.  However, as previously mentioned, though not identical, they are consistent.  Defendant fails to provide evidence or argumentation as to how this statement was incorrect or improper.  The prosecutor is allowed to assert inferences from the evidence and argue the record.  *Bates*, 402 F.3d at 646.

19

Third, Petitioner states the prosecution engaged in misconduct by stating he is "not someone who got extra money from a job" [Doc. 1 p. 12].[11] Petitioner's brother testified that Petitioner did not have a job, and that he assumed the money Petitioner possessed was from selling heroin [3:13-cr-145, Doc. 165 p. 64]. The statement in closing then, that Petitioner did not have extra money from a job, was accurate, as he was unemployed. Such a statement creates no prejudice, does not improperly bolster any witnesses' statements, and does not constitute prosecutorial misconduct.

Finally, Petitioner argues that the prosecution's statements that he started the conspiracy in "early 2011" and that he gave his brother a napkin with a customer list on it[12] constitute misconduct. Petitioner argues these statements did not have supporting evidence and were "meant to mislead the jury" [Doc. 1 p. 12]. "A prosecutor's statement in a closing argument is improper if the statement brings to the jury's attention purported facts that are not

---

[11] The full text of this portion of closing argument states:

Does it make sense when the officer patted him down for him to have approximately $3,063 in those bundles that you saw wrapped in 20s, wrapped in rubber bands. This is not someone whose got extra cash, because they have been working a job, in their wallet. These are thousand dollar bundles of money in his pocket and then another $900 is found in some other location on his person for a total of almost $4,000 seized from his person that day.

[3:13-cr-145, Doc. 165 p. 149].

[12] Counsel for the government stated:

How did Christopher Jackson get involved? He paid money, he bought some drugs for the defendant to bring down. They talked about contributing to more heroin instead of pills and then he received basically a customer list. You are in business, you have a lot of people that you do business with. He received such a list, written on a napkin, from the defendant.

[3:13-cr-145, Doc. 165 p. 160].

20

in evidence and are prejudicial." *United States v. Wiedyk*, 71 F.3d 602, 610 (6th Cir. 1995). However, Petitioner does not identify how misidentifying the year in which the conspiracy began or the statement about the customer list was prejudicial. The year in which events occurred would not weigh on defendant's guilt or innocence, nor would such a statement strengthen any other witness's testimony as Petitioner alleges. The statement about a customer list must be viewed in the context of closing argument where the government was discussing Miller and Christopher Jackson's involvement and the consistency between statements. In the context of the whole trial, and given the previously mentioned additional evidence against defendant, there was not a reasonable probability that but for this statement, the outcome of the trial may have been different.

## III. Conclusion

For good cause, Petitioner's motion to withdraw the motions to amend [Doc. 14] is **GRANTED**. The Clerk is **DIRECTED** to remove Petitioner's motions [Docs. 10, 11] from the electronic filing system. Additionally, the motion to supplement [Doc. 15] is **GRANTED**. Finally, for the reasons explained above, Petitioner is not entitled to relief under 28 U.S.C. § 2255, and his motion to vacate, set aside or correct his sentence [Doc. 1] will be **DENIED**, and this action will be **DISMISSED**. The Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** Petitioner leave to proceed *in forma pauperis* on appeal. *See* Fed. R. App. P. 24. Moreover, because Petitioner has not made a substantial showing of the denial of a constitutional right, and jurists of reason would not dispute the above conclusions, *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), a certificate of appealability **SHALL NOT ISSUE**.

28 U.S.C. § 2253; Fed. R. App. P. 22(b). A separate judgment will enter **DENYING** the motion [Doc. 1].

ENTER:

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE